CHARLES JACKSON, Respondent, v. WILLIAM H. FULTON, Appellant.

**Kansas City Court of Appeals, March 4, 1901.**

1. **Trial Practice:** BILL OF EXCEPTIONS: AMENDMENT OF: EVIDENCE. A bill of exceptions when signed and filed is part of the record, and may be amended on proper evidence, such as a record entry or minute or some paper in the cause.

2. ———: ———: ———: ———. The evidence consisting of statements filed with the justice and instructions considered and held insufficient to correct a bill of exceptions.

3. ——: ——: ——: ——: STENOGRAPHER'S NOTES. While the notes of a stenographer are valuable in making up a bill of exceptions, they are not infallible, and in this case are held insufficient to amend the bill by.

4. Justices' Courts: JOINDER OF CAUSE OF ACTION: AMENDMENT. The statute relating to joinder of causes of action in justices' courts is more liberal than the statute on the same subject in the circuit court, and permits the plaintiff to unite, in one suit, as many causes of action as he may have, save that a cause of action in contract can not be united with one in trespass, and so the statement may be amended by setting up an additional cause of action.

5. ——: ——: ——: NOTICE. In a justice's court an amended statement may be filed and no new notice need be given; and a party served must take notice of all the proceedings until final judgment.

6. ——: ——: ——: ——. Where the defendant is served, and appears and moves to strike out the amendment to the original statement, every purpose of notice is subserved.

7. ——: ——: APPEAL: AMENDMENT. On an appeal from a justice, no amendment changing the cause of action is allowed in the circuit court, but that rule has no application to the practice before the case reaches the latter court; and where the justice properly refused to strike out an amendment, it was error for the circuit court to strike out the amendment on a renewal of the motion before it.

8. Fences and Inclosures: PARTITION FENCE: EVIDENCE. The evidence is reviewed and it is found that plaintiff and defendant did not have a partition fence within the statute, and each occupied his own land under a common inclosure.

9. ——: COMMON LAW: ADJOINING PROPRIETORS. The common law, restraining cattle from running at large, has never been in force in this State, but the common law as to adjoining proprietors without a partition fence is in force, and under it each party must fence up his own stock or pay the damage it may do to the other proprietor.

10. ——: ——: STATUTE: PLEADING. A party can not sue upon one cause of action and recover on another, yet, where the

Jackson v. Fulton.

statute and the common law are one and the same, it is immaterial whether the pleader designates his action as statutory or at common law.

11. ———: ———: ———: ———. Where a statute does not restore the common law, but merely enacts a like law, and to recover reliance must be put on the statute alone, the action should be on the statute.

12. ———: RESTRAINING ANIMALS: ADJOINING PROPRIETORS. The statute restraining animals from running at large relates to animals coming upon the premises from the outside and has no application to the case of adjoining proprietors occupying premises under a common inclosure, and the relations of such proprietors are regulated by the partition-fence statute or the common law.

Appeal from Schuyler Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

REVERSED AND REMANDED.

*Higbee & Mills* for appellant.

(1) In the first count plaintiff made a statement of facts "which did not constitute his cause of action." This count is an action against the defendant for damages for allowing his sheep to run at large and trespass upon plaintiff's premises contrary to the provisions of the statute restraining stock from running at large. It is a statutory action, and is bottomed upon alleged violation of that statute. The evidence tended to show a breach of a common-law duty, and wholly disproved the violation of the statute. The instructions authorized a verdict for plaintiff solely on the facts alleged in the second count, which had been properly stricken out. The two causes of action are entirely distinct. The evidence did not correspond with the allegations. There can be no recovery for a breach of a common-law obligation, where the action is based on a

violation of a statutory duty. It was error for the court to change the form and substance of the action by its instructions to the jury, ignoring the allegations of the first count, "which characterized and gave form to the action." A party can not sue on one cause of action and recover on another. This rule is as inexorable under the code as at common law. Sims v. Field, 24 Mo. App. 557, 564; Sumner v. Rogers, 90 Mo. 324; Pruett v. Warren, 71 Mo. App. 84, 86; Price v. Railroad, 40 Mo. App. 189; Huston v. Tyler, 140 Mo. 252; Mackler v. Cramer, 32 Mo. App. 542, as explained in Hopkins v. Ott, 57 Mo. App. 292, foot 296. (2) Here were two farms inclosed by uniting outside fences. They were occupied in severalty. The owners were not bound by the common law to fence against each other. The common law regulates their relations. Each was required to keep his stock on his own premises. If defendant suffered his stock to trespass on plaintiff's premises when they had not fenced against each other, he was liable at common law for damages and not under the statute. The inclosure statutes apply only to outside fences. O'Riley v. Diss, 41 Mo. App. 184, 189; s. c., 48 Mo. App. 62, top 65; Field v. Bogie, 72 Mo. App. 185; Hopkins v. Ott, 57 Mo. App. 292 and cases cited. (3) The court erred in sustaining plaintiff's motion to amend appellant's bill of exceptions. There was no evidence to warrant the court in so doing. A bill of exceptions, after it has been signed by the judge and filed, is a part of the record, equal in dignity to any other part of the record. In order to justify the court in changing it, the record itself must in some plain and unmistakable manner show the fact authorizing its correction. It can not be made from the judge's memory, nor on parol proof derived from other sources. Ross v. Railroad, 141 Mo. 390, 395, 397, in which the cases are reviewed. Page v. Chapin, 80 Mo. App. 159, foot 163. (4) It is the duty of

Jackson v. Fulton.

the trial court to settle the bill of exceptions and sign it. This the court did. The finding of the trial court as to what the evidence on the trial was, was final and conclusive. Morse v. Kimball, 153 Mo. 579, foot 589. (5) The stenographer's notes could not be used to impeach the bill of exceptions after it had been signed and filed and the term had passed. He is not made the umpire to decide disputed questions as to what the evidence was. Even in a bill of exceptions containing his transcript of his notes, the correctness of the evidence as set out is proven, not by his attestation, but by the certificate of the judge. The judge's understanding when it comes to the bill of exceptions, must prevail. Padgitt v. Moll, 60 S. W. Rep. 121, 124; Byrd v. Hartman, 70 Mo. App. 57, 59. (6) The bill of exceptions, like a judgment, needs no such vouchers for its authenticity as the stenographer's notes. It imported absolute verity. It had been settled, signed and filed, and the term had passed. Jones v. Hart, 60 Mo. 351, 356; Bohm Bros. & Co. v. Stivers, 75 Mo. App. 291, 296; Railroad v. Holschlag, 144 Mo. 253, foot 256.

*Fogle & Eason* for respondent.

(1) The general stock law required the appellant to keep his sheep inside of his own inclosures. R. S. 1899, sec. 4777. (2) This law was, by admission of appellant, adopted in Schuyler county, Missouri, and was in force at the time of trespass. (3) Appellant permitted his sheep to run at large outside his inclosures and go upon respondent's land and there commit damage. He is liable for same in this action. Bowles v. Abrahams, 65 Mo. App. 10. (4) Respondent had judgment, and this court will not reverse the same whenever it is, from the evidence, for the right party, although there may be error in refusing instructions. Jones v. Poundstone, 102 Mo.

240; Stern v. Foltz, 152 Mo. 560; Fairbanks v. Long, 91 Mo. 628; Barkley v. Cemetery Ass'n, 153 Mo. 300. (5) A statutory fence must be a lawful fence as defined by sections 3294 and 3295, must serve to inclose the lands of adjoining proprietors and must have been divided as provided by statute, section 3999, R. S. 1899. Kent v. Lix, 47 Mo. App. 567; Mackler v. Cramer, 48 Mo. App. 378; s. c., 32 Mo.. App. 549. A fence is not a division fence unless built on the line. Sims v. Field, 74 Mo. 139; Jeffries v. Burgin, 57 Mo. 327. (6) Respondent's fence and appellant's fence were not partition fences built by agreement of the parties. DeArcy v. Miller, 86 Ill. 102; York v. Davis, 11 N. H. 241. (7) Respondent's petition in the count upon which he recovered alleges, that appellant wrongfully and unlawfully permitted his said sheep to escape, etc., and enter the premises of the respondent, etc. This allegation is proven; first, by proving the general stock law is in force in Schuyler county, Missouri; that appellant's farm was fenced separate and apart from respondent's; that his sheep got out of his farm and entered upon respondent's and committed the injury complained of. Second. By proving that appellant's farm was not fenced at all, and that he permitted his sheep to go from his premises to enter respondent's and there destroy the corn; that the general stock law was in force. Third. By proving that appellant's and respondent's farms adjoin and are inclosed by one continuous outside fence, there being no partition fence, and that appellant permitted his sheep to go from his premises in and upon respondent's adjoining premises and there do the damage. (8) Then, if respondent proves any one of the above, he makes his case and appellant is liable. Hill v. Railroad, 49 Mo. App. 520; s. c., 121 Mo. 477; Hurley v.Railroad, 57 Mo. App. 675, at top p. 681; Boone v. Railroad, 20 Mo. App. 232; Minter v. Railroad, 82 Mo. 128; Goodwin v. Railroad, 75 Mo. 73.

ELLISON, J.—The defendant's sheep destroyed plaintiff's corn which was standing in the shock in his field. Whereupon plaintiff brought this action before a justice of the peace for damages. The statement of his action, as originally filed with the justice, was based on the statute (section 354, Revised Statutes 1899) prohibiting the owner from allowing his domestic animals to run at large. Afterwards, before the trial in the justice court, plaintiff filed an amended statement by adding to the one originally filed a second count, in which he stated that he and defendant owned adjoining tracts of land inclosed by one continuous outside fence each cultivating and controlling his own tract. That defendant turned his sheep loose upon his own tract from whence they passed over onto plaintiff's tract and destroyed his corn, standing in the shock.

Defendant then filed his motion asking the justice to strike out the said second count, on the ground that it was the statement of another and different cause of action and not an amendment of the original cause of action. The justice overruled the motion and defendant refused to take any further part before the justice. On hearing the evidence, the justice rendered judgment for the plaintiff. Defendant afterwards appealed the case to the circuit court, and there renewed his motion to strike out the second count and that court sustained the motion, thus leaving the case stand on the first count as originally stated before the justice. The cause was then heard and judgment again rendered for plaintiff. Whereupon defendant appealed to this court. The bill of exceptions allowed contained an admission in the following words:

"It was admitted that plaintiff's tract of forty acres and defendant's farm adjoin and were inclosed by continuous outside fences at the time of the alleged trespass. And that the stock law was then in force restraining sheep from running at large."

After the cause reached this court, plaintiff filed his motion in the circuit court to strike from the bill of exceptions that part of the admission stating that his and defendant's farms adjoin and were inclosed by continuous outside fences; stating as the ground of his motion that it was false—that no such admission was made. The circuit court, after hearing evidence from each party, sustained the motion, whereupon defendant appealed to this court. The latter appeal is termed by defendant a supplemental appeal in the same case and it has been filed by the clerk with the original case.

A bill of exceptions when signed by the judge and duly filed becomes a part of the record. And like any other record it may be amended or corrected on proper evidence. The testimony of witnesses or the memory of the judge (especially if the term has passed) will not suffice. There must be some record entry, or minutes of the judge, or clerk, or some paper in the cause, which will make it certain that the matter sought to be inserted or stricken out should be inserted or omitted. Ross v. Railroad, 141 Mo. 390.

In this case the evidence introduced to justify the correction of the bill of exceptions consisted of the written statements of the plaintiff's cause or causes of action, the instructions in the cause and the transcript of the stenographer's notes taken at the trial which were filed with the clerk. The evidence was not of sufficient force to justify a change of the bill of exceptions. In some jurisdictions a change of a bill of exceptions, except for fraud, is not allowed at all. With us, as we have seen, a change may be made, but it should be considered a most important undertaking and should not be allowed except upon evidence of a proper character which is so clear and convincing as not to be subject of but one reasonable interpretation. In some instances it may well be that the pleadings or instructions in a cause may have a direct bearing

on a question made as to the verity of a bill of exceptions. But what relevancy they could have on the question here, viz: whether a certain admission had been made during the trial, we can not see. Such evidence was perhaps offered to show the probabilities of the matter. As for instance, one of the instructions offered by defendant and refused shows, by its wording, that the question of there being one continuous outside fence around both tracts was offered to be submitted, along with other contentions, to the jury; the idea, as we suppose, being that if the matter had been admitted it would not have been so submitted in the instruction offered. If we should concede that this does show some probability in favor of the proposition that the bill of exceptions was wrong, yet a mere probability is much less than is necessary to undo so solemn a record as a bill of exceptions. It may be a probability, but when one recalls the great number of instances in which attorneys submit instructions which involve, along with other matters in the trial, hypotheses which have been admitted either by the pleadings or by statement of counsel, or both, he will realize how slight the probability is.

The stenographer's notes deserve more consideration, but they, too, fall short. They simply fail to show the admission shown by the bill of exceptions. The notes of the stenographer are valuable.data from which to make up a bill of exceptions, but by no means infallible. Their verity is often disputed by counsel and it is left to the trial judge to say whether they are correct. It is not infrequent that the stenographer has not put down a correct report of an expression, a statement or an admission. This the judge determines before he signs the bill. Padgitt v. Moll, 159 Mo. 143; Hicks v. Hoos, 44 Mo. App. 578. What is there in this case to show that this very admission may not have been a matter of controversy when the bill was being settled and that the judge found the stenographer

had inadvertently omitted it? From these considerations we feel constrained to regard the bill of exceptions as originally made up and approved by the trial judge, as the correct record.

As before stated, the original statement before the justice was an action on the statute preventing stock from running at large. The justice permitted an amendment by adding a statement of a cause of action at common law for the same injury, by charging that the stock escaped from defendant's field onto plaintiff's adjoining field, which were under a common inclosure. In this we think the justice was right. The statute (section 3851, Revised Statutes 1899) relating to joinder of causes of action before a justice of the peace is much more liberal than is the statute on the same subject governing circuit courts (section 593, Revised Statutes 1889). The former permits a plaintiff to unite in one suit as many causes of action as he may have, save that a cause of action in contract can not be united with one in trespass. Thus the statute reads and so it has been decided. Roberts v. Railroad, 43 Mo. App. 287; Spangler v. Kite, 47 Mo. App. 230; Seiter v. Bischoff, 63 Mo. App. 157. It therefore being proper practice before a justice to join, in the first instance, as many causes of action as a plaintiff may have (with the exception stated), there can be no objection to allowing an amendment in the justice's court setting up additional causes of action; for, of course, he may do by amendment what he might have done originally.

But no formal notice was given to defendant after such amendment was made. In this State, amendments to the petition may be made in the circuit court before answer, and no notice of the amendment is required (section 661, Revised Statutes 1899), though in some jurisdiction notice is required. And so an amended statement may be filed before a justice of the peace and no new notice need be given unless new parties are made. R. S. 1899, secs. 3957-3958. The rule is that when

a party is summoned, or enters his appearance, in the absence of a statute to the contrary, he must take notice of all proceedings taken in the cause until final judgment is rendered. Roberts v. St. Louis M. L. Co., 126 Mo. 460; Parker v. Johnson, 22 Mo. App. 516; Wright v. Leclaire, 3 Clarke 221, 241; Delaplaine v. Hitchcock, 6 Hill 14; Cline v. Green, 1 Blackf. 53; Haynes v. Rice, 33 Texas 167; Coor v. Smith, 107 N. C. 430; Smith v. Brittonham, 98 Ill. 188; Freeman on Judgments, sec. 142.

If, however, a judgment in the circuit court is by default, the statute interposes and prevents any substantial amendment by requiring that the judgment shall be for the sum or the relief asked in the original petition. R. S. 1899, sec. 776. We are not advised that that statute would apply to judgments which are rendered in causes originating before justices of the peace. But conceding that it does, we do not regard the judgment rendered by the justice as a judgment by default in a sense to deny the right of amendment. Defendant was regularly served with a summons. He appeared and made his motion to strike out the amendment. Every purpose of notice of the amendment was thus subserved. Kimball v. Bryan, 56 Iowa 632; Rabb v. Rogers, 67 Texas 335.

If the actions were properly joined in the justice's court they, certainly, remain properly joined, on appeal to the circuit court, and defendant's motion to strike out should have been overruled. It is true that in the circuit court, on an appeal from a justice of the peace, an amendment changing the cause of action, or adding an additional cause of action, will not be permitted for the reason that the statute requires the same cause of action and no other to be tried in the circuit court which was tried in the justice's court. R. S. 1899, sec. 4077; Gregory v. Railroad, 20 Mo. App. 448; Evans v. Railroad, 67 Mo. App. 255. But that statute has no application to the

practice before the case reaches the circuit court. All that that statute accomplishes is to compel the trial, on appeal, of the same controversy that was tried before the justice.

Plaintiff took no exception to the action of the court in striking out his second count and did not stand on his statement. The case is therefore before us as having been tried on the first or original count, and from that standpoint we must consider it.

The bill of exceptions shows but one witness, and that was the plaintiff himself. His field adjoins defendant's inclosed land. As to the original conditions of the fencing between them, his testimony is not specific. But it appears therefrom that defendant had an inferior sort of rail fence, presumably along the line, and that afterwards plaintiff built a fence composed of posts and three wires, the bottom wire being some space above the ground, setting it in about six feet on his own land. Afterwards, defendant took the rails in his fence and built them in under plaintiff's wire fence; thus leaving one fence, the bottom being of defendant's rails and the top composed of plaintiff's wire. This was done by defendant without express permission from plaintiff and without protest or objection from him. The sheep got through into plaintiff's field by passing under the wire at places where it was not sufficiently built up with rails. The testimony was either very indefinitely given or else has been imperfectly preserved. The best we can make of it is that the fence does not extend all the way between the lands of plaintiff and defendant. There had not been, for several years, two parallel fences between them. There has been but one fence and that not all the way between them.

These parties did not have a partition fence as contemplated by the partition fence statute. Mackler v. Cramer, 32 Mo. App. 550; Webber v. Closson, 35 Maine 26. They had a fence only along a part of the line between them—part

of the way was not fenced at all. So that they occupied each his own land under a common outside inclosure, with no established partition fence between them.

The common law as to restraint of cattle from running at large on the commons has never been held applicable to this State. Gorman v. Railroad, 26 Mo. 441; McPheeters v. Railroad, 45 Mo. 25; Tarwater v. Railroad, 42 Mo. 193; though the statute under which this case was tried now enacts a law like the old common law. But the common law as to adjoining proprietors whose fields are under a common inclosure and not divided by partition fence has never been considered inapplicable to this State. Therefore, in this case, plaintiff and defendant were each under the common-law duty to fence up his own stock, or in default to pay the damage it might do to the other by going over on to his premises. O'Riley v. Diss, 41 Mo. App. 184; Webber v. Closson, supra; Myers v. Dodd, 9 Ind. 290.

In this connection, defendant makes the point against the judgment that plaintiff's right of action is on an escape of defendant's cattle from his adjoining field under a common inclosure with plaintiff's, as shown by the bill of exceptions, and is therefore a right of action at common law, and since, as already stated, he has placed it on the statute, he can not recover in the present suit; as that, according to defendant's contention, would be to allow a recovery on a different cause of action from that sued upon. It is true a party can not sue upon one cause of action and recover on another, yet where the statute and the common law are one and the same thing, and the same evidence would sustain either, it is a matter of indifference whether the pleader designates his action as statutory or common law. Becker v. Schutte, 85 Mo. App. 57.

But the difficulty with plaintiff's case, at this point, is that the statute, while enacting into law that which is identical with

Jackson v. Fulton.

the common law on the subject of permitting stock to run at large, at the same time does not recognize the common law. It does not restore the common law, though it enacts a like law. The statute, *proprio vigore,* permits a recovery of damage occasioned by stock permitted to run at large. In order to recover, reliance must be placed on the *statute alone* and proof must be made that the·voters of a given county have elected to come under its provisions.

If plaintiff should claim that he did show that the voters of Schuyler county elected to place that county under the provisions of the statutory stock law, it may be answered that the statute applies to outside fences and the proof was therefore wholly irrelevant to the case made by the admitted facts, viz: that the sheep did not come upon him from the outside, but came from an adjoining field under a common inclosure. This is the position taken by defendant's counsel and it is, in effect, saying that the statute applies only to animals which come from the outside on to the injured party's premises. We believe the position is the proper meaning of the statute. It is well settled that our inclosure statute, providing for and defining lawful fences and making parties liable whose animals break through such fences, applies only to outside fences. Reddick v. Newburn, 76 Mo. 423; McCormack v. Tate, 20 Ill. 334; Johnson v. Wing, 3 Mich. 163. It is evident that the stock law statute was meant to supersede the inclosure statute in counties where adopted and that the effect of the latter is to permit one to allow his fields to go unfenced and yet recover damages occasioned by stock running at large. In counties where it is lawful for animals to run at large on the highways and commons, it is incumbent upon the owner of fields and pastures, if he wishes to preserve them, to fence* against such animals with a lawful fence as prescribed by the inclosure

Vol 87 app—16

National Bank v. Davis.

statute. But in those counties where the stock law statute is in force, and therefore unlawful for such animals to run at large, no such necessity or obligation to fence exists.

There is a separate statute for inside or partition fences, and, as we have already seen, where there is no proper partition fence and no agreement or prescription to the contrary, the common law is in force and regulates the rights and duties of the owners of adjoining fields. O'Riley v. Diss, supra. Besides, we believe the face of the statute itself shows that it was intended to apply to animals which are at large on the outside.

The result of the foregoing consideration is to reverse the judgment and remand the cause. *Smith, P. J.,* concurs; *Broaddus, J.,* not sitting.